Scott D. Tenley (Cal. Bar No. 298911)
*scott@tenleylaw.com*
**TENLEY LAW, P.C.**
2601 Main Street, Suite 850
Irvine, California 92614
Telephone: (949) 749-2300
Facsimile: (949) 520-6727

Attorneys for Defendant
CHRISTIAN CERNA CAMACHO

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-cr-00505-CV |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO COMPEL DISCLOSURE OF GRAND JURY MATERIALS** |
| v. | |
| CHRISTIAN DAMIAN CERNA CAMACHO, | Hearing Date: October 10, 2025 |
| Defendant. | Hearing Time: 10:30 a.m. |
| | Location: Courtroom 10B |

**TO THE ACTING UNITED STATES ATTORNEY AND ASSISTANT UNITED STATES ATTORNEY ANDREW ROACH:**

PLEASE TAKE NOTICE that on October 10, 2025 at 10:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Cynthia Valenzuela, United States District Judge, defendant Christian Cerna Camacho, by and through his attorney of record, Scott D. Tenley, will and hereby does move for an order compelling the disclosure of grand jury materials, including the grand jury charge, pre-

testimony proceedings, witness testimony, post-deliberation proceedings, and the grand jury ballot associated with both the original indictment and the first superseding indictment.

This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Scott D. Tenley and attached exhibits, the files and records in this case, and any additional evidence and argument that may be presented to the Court at the hearing on this motion.

This motion follows telephonic conferences of counsel which occurred on August 18, 2025 and August 20, 2025.  (Declaration of Scott D. Tenley ("Tenley Decl.") ¶ 9.) The parties could not resolve the issues presented in this motion during the course of those conferences.

Respectfully Submitted,

DATED:  September 8, 2025        **TENLEY LAW, P.C.**

_____

SCOTT D. TENLEY

ii

# **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.     PERTINENT BACKGROUND ........................................................................... 2

III.    ARGUMENT ....................................................................................................... 4

        A.      Legal Standards ....................................................................................... 4

                1.      Disclosure of Grand Jury Materials ............................................ 4

                2.      The Speedy Trial Act ................................................................... 5

        B.      Mr. Cerna Has a Compelling Need For Grand Jury Materials ................ 6

        C.      Any Lingering Interest in Grand Jury Secrecy is Slight ......................... 9

IV.     CONCLUSION .................................................................................................. 10

CERTIFICATE OF COMPLIANCE ................................................................................ 12

1

# **TABLE OF AUTHORITIES**

2

## **CASES**

3

4

*Bank of Nova Scotia v. United States*
   487 U.S. 250 (1988)..........................................................8

5

*Dennis v. United States*
   384 U.S. 855 (1966)..........................................................5

6

7

*In re Grand Jury Proc. Relative to Perl*
   838 F.2d 304 (8th Cir. 1988) ..........................................5

8

*Stirone v. United States*
   361 U.S. 212 (1960)..........................................................7

9

10

*U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal., Cent. Div.*
   345 F.2d 18 (9th Cir. 1965)......................................4, 5, 10

11

*United States v. Carona*
   2008 WL 1970205 (C.D. Cal. May 2, 2008)....................4

12

13

*United States v. Dynavac, Inc.*
   6 F.3d 1407 (9th Cir. 1993) ............................................9

14

15

*United States v. Filer*
   762 F.Supp.3d 730 (N.D. Ill. 2025) ................................6

16

*United States v. Flores*
   2017 WL 2622733 (C.D. Cal. June 13, 2017)..........4, 5, 9, 10

17

*United States v. Plummer*
   941 F.2d 799 (9th Cir. 1991) ..........................................5

18

19

*United States v. Samango*
   607 F.2d 877 (9th Cir. 1979) ......................................4, 8

20

*United States v. Way*
   2015 WL 8780540 (E.D. Cal. Dec. 15, 2015)..............4, 9

21

## **STATUTES**

22

18 U.S.C. § 3161 ................................................................5, 6

23

18 U.S.C. § 3162(a)(1)......................................................1, 6

24

## **RULES**

25

Fed. R. Crim. P. 6(e)(3)(E) ............................................4, 10

26

Fed. R. Crim. P. 6(e)(3)(E)(ii) ..........................................2

27

28

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On June 16, 2025, a federal grand jury returned an indictment in the case entitled *United States v. Christian Damian Cerna Camacho*, and alleged as follows:

> On or about June 7, 2025, in Los Angeles County, within the Central District of California, *defendant BRAYAN RAMOS-BRITO*, . . . intentionally and forcibly assaulted, resisted, impeded, intimidated, and interfered with **victim J.M.**, an employee of the United States Border Patrol, and in doing so made physical contact with **J.M.**, while **J.M.** was engaged in, and on account of, the performance of **J.M.**'s official duties.

(Dkt. No. 28.)[1]    Other than the case caption listing Mr. Cerna's name, no offense was charged against Mr. Cerna.  Five weeks later, on July 23, 2025, the same grand jury returned a First Superseding Indictment charging Mr. Cerna with assaulting "E.M.," a reference to U.S. Border Patrol Agent Eduardo Mejorado.  By that time, however, the charge was stale under the Speedy Trial Act.  Because Mr. Cerna was charged in a criminal complaint and arrested for assaulting Agent Mejorado over 30 days before he was indicted for that offense, the Speedy Trial Act requires the charge now pending against Mr. Cerna to be dismissed.  While the Court must dismiss the charge against Mr. Cerna, the Court has discretion as to whether that dismissal is with or without prejudice.  To make that determination, the Court must consider, among other factors, "the facts and circumstances of the case which led to the dismissal[,] and the impact of a reprosecution on the administration of this chapter and on the administration of justice."   18 U.S.C. § 3162(a)(1).

Through this motion, Mr. Cerna seeks disclosure of grand jury materials related to the Indictment and First Superseding Indictment which bear directly on the analysis the Court must conduct in connection with its dismissal order.  Federal Rule of Criminal

---

[1] Unless otherwise noted, all emphasis is added and all internal marks, citations, and alterations have been omitted.

1

Procedure 6(e) allows the district court to authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter at the request of any defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).  While the Speedy Trial Act violation here might reflect rushed and sloppy prosecutorial work, it could also be the result of overzealous, unprincipled, and constitutionally defective grand jury presentments, which public reports of immigration protest-related cases suggest is a widespread problem within the Justice Department.  Either way, the unique circumstances presented here comfortably meet the requirements for disclosure, and the Court should compel the production of the requested materials.

## II.    PERTINENT BACKGROUND

On June 9, 2025, Mr. Cerna was named in a criminal complaint charging him with violating 18 U.S.C. § 111, Assault on a Federal Officer.  (Dkt. No. 1.)  The complaint alleged that on June 7, 2025, Mr. Cerna "sucker punched" U.S. Border Patrol Agent Eduardo Mejorado, referred to in the complaint as "E.M.," during immigration-related protests occurring in Paramount, California.  Mr. Cerna was arrested on June 11, 2025. (Dkt. No. 7.)  He made his initial appearance the following day, June 12, 2025.  (Dkt. No. 8.)

On June 16, 2025, a federal grand jury returned an indictment in the case captioned *United States v. Christian Damian Cerna Camacho*, No. 2:25-cr-00505-CV.  (Dkt. No. 28)  The indictment, however, did not charge Mr. Cerna with any offenses.  Instead, the indictment alleged that Brayan Ramos-Brito assaulted U.S. Border Patrol Agent "J.M." The indictment stated:

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 111(a)(1), 2(a)]

On or about June 7, 2025, in Los Angeles County, within the Central District of California, defendant BRAYAN RAMOS-BRITO, also known as

2

"Brian Ramos-Brito," and others known and unknown to the Grand Jury, each aiding and abetting the others, intentionally and forcibly assaulted, resisted, impeded, intimidated, and interfered with victim J.M., an employee of the United States Border Patrol, and in doing so made physical contact with J.M., while J.M. was engaged in, and on account of, the performance of J.M.'s official duties.

(Dkt. No. 28.)   The foreperson certified the indictment as "A True Bill" using a "/S/" signature.

On June 18, 2025, the government purported to file with the Court Clerk an indictment charging Mr. Ramos-Brito with allegedly assaulting U.S. Border Patrol Agent "J.M." (Tenley Decl. Ex. 1.)  The indictment was not signed by the grand jury foreperson.[2]

On July 14, 2025, Mr. Cerna appeared for arraignment before the Honorable Maria A. Audero, United States Magistrate Judge.  (Dkt. No. 34.)  Through counsel, Mr. Cerna informed Judge Audero that the indictment did not put him on notice of the offense purportedly charged against him, and reserved all rights and arguments related to the indictment and his Speedy Trial Act rights.  (Tenley Decl. ¶ 3.)  The Assistant United States Attorney appearing on the government's behalf advised the Court that the indictment contained typographical errors that the government would correct.  (*Id.* at ¶ 4.)

The government's representation to the Court was consistent with statements it made in a proposed plea agreement.  On July 10, 2024, the government extended Mr. Cerna an offer to plead guilty to an Information charging him with assaulting Agent Mejorado on June 7, 2025.  (Tenley Decl. ¶ 2.)  With respect to the Information, the plea agreement contained a footnote stating, "The superseding information corrects only typographical errors in the indictment; the charge and substance of the charge remain identical to those in the indictment charged by the grand jury in *United States v. Christian Damian Cerna Camacho*, 2:25-cr-00505-CV."  (*Id.*)

---

[2] The government subsequently notified the Court this document was filed in error.

3

On July 23, 2025, the grand jury returned a First Superseding Indictment ("FSI") that alleged Mr. Cerna assaulted Agent Mejorado (referred to in the FSI as "victim E.M.") on June 7, 2025.  (Dkt. No. 38.)

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   Disclosure of Grand Jury Materials

While grand jury secrecy is strong, it is not absolute.  *United States v. Flores*, 2017 WL 2622733, at *2 (C.D. Cal. June 13, 2017); *see also U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal., Cent. Div.*, 345 F.2d 18, 21 (9th Cir. 1965) ("Petitioners recognize, however, as they must, that the right to maintain secrecy of grand jury proceedings is not an absolute one.").  Under Rule 6(e), a district court may authorize the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  *United States v. Carona*, 2008 WL 1970205, at *2 (C.D. Cal. May 2, 2008) (quoting Fed. R. Crim. P. 6(e)(3)(E)).  In moving for disclosure under Rule 6(e), the defendant bears the burden of demonstrating that he has a "particularized and compelling need" for the sought-after materials.  *Id.* (quoting *U.S. Indus.*, 345 F.2d at 21).  Such a "particularized need can arise in the context of 'unfair or improper prosecutorial conduct.'"  *Carona*, 2008 WL 1970205, at *2 (quoting *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979)).  The court has broad discretion when determining whether the particular circumstances of a case merit disclosure.  *See Flores*, 2017 WL 2622733, at *2 ("The Court has 'substantial discretion to order or deny [the] release' [of] grand jury transcripts.").

When evaluating the defendant's showing, the "Court need not reach whether a motion to dismiss would, in fact, be successful.  The Court need only decide if a particularized need has been shown that a ground to dismiss the indictment exists."  *United States v. Way*, 2015 WL 8780540, at *4 n.5 (E.D. Cal. Dec. 15, 2015).  Where a defendant has demonstrated a particularized need, the district court must then evaluate that need against the interest in grand jury secrecy.  *Carona*, 2008 WL 1970205, at *2.  "[G]rand

1    jury secrecy is, of course, not an end in itself." *Flores*, 2017 WL 2622733, at *2 (quoting
2    *U.S. Indus.*, 345 F.2d at 22). "If the reasons for secrecy do not apply to a given situation,
3    'or apply to only an insignificant degree, the party seeking disclosure *should not* be
4    required to demonstrate a large compelling need.'" *Id.* at *2 (quoting *U.S. Indus.*, 345 F.2d
5    at 21). And in particular, the interests in grand jury secrecy are reduced, although not
6    eliminated, when the grand jury has ended its investigation. *In re Grand Jury Proc.*
7    *Relative to Perl*, 838 F.2d 304, 307 (8th Cir. 1988). The relative strength of those interests
8    also depends on the material sought – instructions, for example, require less of a
9    particularized need showing than witness testimony. *Id*. "When the defense shows a
10   particularized need for grand jury transcripts that outweighs the need for secrecy, the trial
11   judge's function is reduced to eliminating only extraneous material or issuing protective
12   orders in unusual situations." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991)
13   (citing *Dennis v. United States*, 384 U.S. 855, 875 (1966)).

14                    2.    The Speedy Trial Act

15           When a defendant is charged with an offense by criminal complaint, the Speedy
16   Trial Act, 18 U.S.C. § 3161 *et seq*., requires the government to file an indictment or
17   information charging that offense within 30 days of the defendant's arrest. Specifically,
18   § 3161(b) states, "Any information or indictment charging an individual with the
19   commission of an offense shall be filed within thirty days from the date on which such
20   individual was arrested or served with a summons in connection with such charges."

21           If the government fails to file an indictment or information within this thirty-day
22   period, the Court must dismiss the charges:

23           If, in the case of any individual against whom a complaint is filed charging
24           such individual with an offense, no indictment or information is filed within
25           the time limit required by section 3161(b) as extended by section 3161(h) of
26           this chapter, such charge against that individual contained in such complaint
27           ***shall be dismissed or otherwise dropped***.

28

                                              5

18 U.S.C. § 3162(a)(1).  The Court, however, has discretion to determine whether to dismiss the charges with or without prejudice.  "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  *Id.*

### B.    Mr. Cerna Has a Compelling Need For Grand Jury Materials

Mr. Cerna has identified a basis for the Court to dismiss the charges against him, namely, because he was not indicted by the grand jury for assaulting Agent Mejorado within 30 days of his arrest for that offense.  *See* §§ 3161(b), 3162(a)(1).  The government has taken the position – during arraignment and in the plea agreement – that Mr. Cerna *was* indicted by the grand jury within the statutorily prescribed period and that references to another defendant and another victim within the indictment are merely "typographical errors." (Tenley Decl. ¶¶ 2, 4.)  The only way to subject the government's explanation to adversarial scrutiny is through disclosure of the grand jury materials to the defense.

But beyond that factual matter, the grand jury materials speak directly to other factors the Court will consider when evaluating Mr. Cerna's anticipated request to dismiss the charge with prejudice, namely, the "facts and circumstances of the case that led to the dismissal" and "the impact of a reprosecution on the administration of this chapter and on the administration of justice."

"The purpose of a grand jury is to serve as a shield against unjust prosecutions, not as a sword to rubber-stamp criminal charges."  *United States v. Filer*, 762 F.Supp.3d 730, 742 (N.D. Ill. 2025) (discussing risk of abuse where prosecutors act without judicial oversight or public scrutiny).  It is deeply troubling that a grand jury comprised of sixteen to twenty-one citizens may have blindly signed off on an indictment that (1) did not name the defendant about whom the grand jury heard purportedly heard evidence and (2) did not properly identify the victim who was allegedly assaulted ("J.M." versus Agent Eduardo Mejorado").  If evidence regarding Mr. Cerna *was* presented, as the government

will apparently argue, the grand jury abdicated its function within our constitutional system by acting as a "rubber stamp," and did so at time when this constitutional check on executive authority is needed more than it perhaps ever has in the history of our republic. *Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away.")

The grand jurors should have read and reviewed the charging document proposed to them, carefully considered the testimony and evidence presented, deliberated in good faith as to whether the evidence presented established probable cause of the crime alleged in the charging document, and voted on whether to return a true bill. That did not happen here. Mr. Cerna is entitled to grand jury materials to determine where and how he was deprived of his "substantial" constitutional right. Did the government give an indictment to the grand jury for review prior to the grand jury hearing evidence and testimony? If not, what about prior to its deliberations? If an indictment was proposed to the grand jurors, were the grand jurors given sufficient time to review that indictment? For how long did the grand jury deliberate? Did the grand jurors inquire as to whether Brayan Ramos-Brito was named in the charging document rather than Mr. Cerna? Without access to grand jury materials – including the grand jury charge and all proceedings (both before testimony is present and after deliberations concluded) – Mr. Cerna is without the information necessary to raise these issues with the Court.

Relatedly, there has been intense public scrutiny over the tactics employed by the Department of Justice when presenting cases that allege assaulting or interfering with immigration enforcement actions, both in and outside of this district. In this district, the *Los Angeles Times* has reported, based on information from "three law enforcement officials," that the U.S. Attorney has screamed through a speakerphone "outside the grand jury room" when a grand jury refused to return an indictment of an immigration-related protestor. (Tenley Decl. Ex. 2.) The U.S. Attorney reportedly told prosecutors to "press on and secure indictments" regardless of Department of Justice policies. (*Id.*) These same officials further disclosed that "prosecutors have struggled to get several protest-related

7

1   cases past grand juries." (*Id.*)  Other public reports indicate U.S. immigration officials
2   made "false and misleading statements in their reports" about immigration related
3   activities, one of whom is Agent Mejorado, the alleged victim in this case.  (Tenley Decl.
4   Ex. 3.)  In the District of Columbia, the Department of Justice presented a case involving
5   an alleged assault using a "sub-style salami sandwich" to *three* different grand juries, none
6   of which returned an indictment.  (Tenley Decl. Ex. 4.)  While it is perhaps comforting to
7   learn a grand jury will not, contrary to the decades-old adage, indict a ham sandwich, it is
8   objectively shocking that the Department of Justice will make three attempts to do so
9   before realizing that its charging theory is untenable to the community.  What happened
10  in Mr. Cerna's case?  We know *something* went wrong.  Mr. Cerna should not be required
11  to "take the government's word for it" as to what those irregularities were or how they
12  occurred – especially not when it implicates his substantial constitutional right to
13  indictment by a grand jury.

14      The grand jury materials sought unquestionably speak to the "facts and
15  circumstance" leading to the dismissal.  They also implicate the "impact of reprosecution
16  . . . on the administration of justice."  If the grand jury process has been perverted, or if
17  the grand jury has abdicated its role as an independent constitutional check on the
18  executive branch, the Court may find that dismissal with prejudice is a necessary sanction
19  to deter similar grand jury abuses or violations in the future.[3]  *See Samango*, 607 F.2d at
20  883 (affirming dismissal of indictment for misconduct before the grand jury; "If the grand
21  jury is to accomplish either of its functions, independent determination of probable cause
22  that a crime has been committed and protection of citizens against unfounded
23  prosecutions, limits must be set on the manipulation of grand juries by over-zealous
24  prosecutors.")

25  _____

26  [3] In addition to a Speedy Trial Act violation, the facts here also raise the possibility
    of dismissal for abuse of the grand jury process.  "A motion to dismiss an indictment for
27  grand jury misconduct must rest on an overriding constitutional theory that the "structural
    protections of the grand jury have been so compromised as to render the proceeding
28  fundamentally unfair, allowing the presumption of prejudice to the defendant."  *Bank of
    Nova Scotia v. United States*, 487 U.S. 250, 259 (1988).

1      For these reasons, Mr. Cerna requests disclosure of the following grand jury
2   materials: (1) the charge and instructions given to the grand jury in connection with both
3   indictments; (2) any pre-deliberation proceedings related to both indictments, including
4   instructions for the grand jury to read the indictments; (3) all witness testimony; (4) any
5   post-indictment proceedings related to both indictment, including related to confirmation
6   of the grand jury's deliberations and return of the indictment; (5) the grand jury ballots;
7   and (6) the copies of the Original and First Superseding Indictments containing the
8   forepersons wet signature.

9      **C.    Any Lingering Interest in Grand Jury Secrecy is Slight**

10     Mr. Cerna's need for grand jury materials to determine how and why the grand jury
11  returned a facially defective indictment outweighs any slight secrecy interest that may
12  exist.  Because the grand jury has already returned the Indictment and the Superseding
13  Indictment, "there is little reason for continuing secrecy."  *Flores*, 2017 WL 2622733, at
14  *3; *Way*, 2015 WL 8780540, at *5; *United States v. Dynavac, Inc*., 6 F.3d 1407, 1412 (9th
15  Cir. 1993) ("When the grand jury investigation is already terminated and an indictment
16  has been issued, only 'institutional' concerns are implicated by the documentary
17  disclosure.").  This is especially true in the context of a "reactive" prosecution – one where
18  the grand jury's indictment is not the result of lengthy investigation, but instead arose after
19  law enforcement arrested a defendant on a criminal complaint.  There is nothing to indicate
20  the grand jury is continuing to investigate Mr. Cerna (or, for that matter, conducted any
21  "investigation" of its own beyond hearing witness testimony on the day of indictment) that
22  would suggest some ongoing interest in secrecy.

23     The Ninth Circuit recognizes five traditional grounds for grand jury secrecy:  "(1)
24  [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the
25  utmost freedom to the grand jury in its deliberations, and to prevent persons subject to
26  indictment or their friends from importuning the grand jurors; (3) to prevent subornation
27  of perjury or tampering with the witnesses who may testify before the grand jury and later
28  appear at the trial of those indicted by it; (4) to encourage free and untrammeled

disclosures by persons who have information with respect to the commission of crimes; and (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *U.S. Indus.*, 345 F.2d at 22. The first, second, and fifth considerations (preventing escape, thwarting witness tampering, and protecting the innocent accused against disclosure of the investigation) do not apply in this post-indictment context. The third factor – preventing witness tampering – likely does not exist in this type of case where the grand jury likely heard from an investigating law enforcement witness only.

The remaining policy consideration implicated here, encouraging free disclosures of future grand jury witnesses, is an institutional concern that can be easily addressed by the Court's ability to authorize disclosure of the requested materials "at a time, in a manner, and subject to any other conditions that it directs." Fed. R. Crim. P. 6(e)(3)(E); *see Flores*, 2017 WL 2622733, at *3 (granting disclosure of grand jury transcripts and ordering defense counsel not to disclose the grand jury testimony therein, without prior authorization of the court, except as necessary to prepare the defense). For example, the Court may require the parties to enter into a protective order before the materials are disclosed.

Because the rationale for secrecy here is minimal, if it exists at all, Mr. Cerna need not be held to the burden of showing an outsized compelling need for disclosure. *See Flores*, 2017 WL 2622733, at *2; *U.S. Indus.*, 345 F.2d at 21. In evaluating these competing considerations, the public interest in complete secrecy is slight in comparison to Mr. Cerna's need for disclosure in the face of a clear, obvious violation of the Speedy Trial Act that may result in the dismissal with prejudice of all charges against him.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Cerna respectfully moves the Court to authorize and compel the government to disclose, subject to an agreed-upon protective order if necessary, (1) the grand jury transcripts in this matter (including the grand jury charge,

pre-deliberation proceedings, witness testimony, and post-deliberation proceedings), (2) the grand jury ballot, and (3) indictments reflecting the foreperson's wet signature.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for defendant Christian Damian Cerna Camacho, certifies that this brief contains 3,534 words, which:

    ✖    complies with the word limit of L.R. 11-6.1.

    ___    complies with the word limit set by Court order dated _____.

DATED:   September 8, 2025      **TENLEY LAW, P.C.**

                              By:   */s/ Scott D. Tenley*
                                     SCOTT D. TENLEY

                               Attorneys for Defendant
                               Christian Cerna Camacho